*Owsley,* for plaintiffs.

---

**TAYLOR & WIFE**
*vs.*
**POSTON et al.**

---

# Taylor and wife *vs* Poston *et al.*

### ERROR TO THE TODD CIRCUIT.

*Conveyances in trust. Descents. Lands and slaves.*

JUDGE MARSHALL delivered the Opinion of the Court—JUDGE EWING did not sit in the case.

THIS bill was filed by Taylor and wife to obtain a division of certain slaves of which Sally Ann Poston died possessed. The slaves, together with a small tract of land, had been conveyed by Sandford Poston, the father of Sally Ann, in trust for the sole use and benefit of his wife and her heirs, with certain powers of disposition and appointment, in default of which, if she died before her husband, the property was to descend to her heirs, but if she survived her husband, she was to have it absolutely, freed from the power of the Trustee. She died

CHANCERY.

*Case 2.*

*September 10.*

The case stated.

TAYLOR & WIFE
    *vs*
POSTON *et al.*

before her husband, leaving an infant daughter, Sally Ann, her only child, who afterwards died under five years of age, and of course unmarried and childless, but leaving her father still surviving, and also several uncles and aunts, by her mother's side, of whom the complainant, Mrs. Taylor, is one.

Grounds relied on in complainants bill.

The ground on which the complainants base their claim in their original bill is, that the slaves descended to the heirs of the decedent by the mother's side and not to the father. This 'ground is attempted to be maintained in argument by contending: 1st, That by operation of the 38th section of the act of 1798, to reduce into one the several acts respecting slaves, &c. *Stat. Law*, 1478, as applied to the deed of trust from Sandford Poston, the slaves therein conveyed, with their increase, were annexed to the land, so as to follow the same course of descent; 2d, That the land and slaves came to the decedent, Sally Ann, by descent or purchase from her mother; and 3d, That the descent of the land being regulated by the act of 1796, *Stat. Law,* 562, the 6th section of which excludes the father from inheriting the land of the child derived by purchase or descent from the mother, if there be any brother or sister of the child or mother living, the brothers and sisters of the mother, to the exclusion of the father, are in this case the preferred heirs of the land and also of the slaves annexed to it.

Whether if the two first of these propositions were admitted, the conclusion would necessarily follow as contended for, need not be decided, for it is certain that if either of the two first positions be untrue, as applied to this case, the conclusion must fail, and we are clearly of opinion that both of them are not, and indeed cannot be true.

The 38th section of the act of 1798 to reduce into one the several acts respecting slaves, &c. *Stat. Law* 1478, applies in its terms only to such deeds or wills as create estates for life or lives in land, and also

The 38th section applies in its terms to such deeds or wills only as create estates for life or lives, in land, and also convey slaves. If, as we are inclined to think is the case, this deed creates an inheritance in Mrs. Poston and not a mere life estate, then the section does not apply, and although the land and slaves all descended to Sally Ann Poston from her mother, there was no annexation of the slaves to the land by force of this section, and

there is, therefore, nothing to take them out of the general law regulating the descent of slaves, which does not exclude the father, and subject them to the sixth section of the act of 1796 regulating the descent of lands, which does exclude the father, when the land descends from the mother.

If, on the other hand, this deed creates a life estate in Mrs. Poston, and if it be further conceded that, therefore, the 38th section applies to it, and because the land and slaves are conveyed in the same manner, and in all respects subject to the same limitations, annexes the slaves to the land so that they must both pass to the same persons, then it would follow that as Mrs. Poston had no estate of inheritance in her, but only an estate for her life, her daughter did not, and could not, derive the estate by descent from her, and she certainly did not derive it from the mother by purchase, for she did no act by which it was transferred from her, or from any other, to her daughter, and indeed had no estate continuing after her death which she could transfer. And on this hypothesis the daughter must have taken the estate directly under the deed of her father, and by purchase from him under the description of *heir of her mother;* in which case the father would take by descent from the daughter, and as the preferred heir, even the land, and the slaves would go to him in the same way, whether annexed to the land or not. It is clear, therefore, that whether the 38th section applies to this case or not, the father of Sally Ann Poston was her heir as to the slaves, and her uncles and aunts, by the mother's side, have no interest in them. This view of the case renders it unnecessary to enter upon any consideration or construction of the details of the 38th section, which has been referred to; and which is now, for the first time, so far as we know, since its adoption into the act of 1798, brought up for adjudication and for practical application to the estates and conveyances of this country. We deem it proper, however, to remark that its provisions, taken literally, seem to annex the slaves to the land indissolubly, and as long as any of the slaves or their increase remain; and that conceiving this feature to be wholly inconsistent with the present policy

TAYLOR & WIFE
vs
POSTON et al.

convey slaves, and does not apply to conveyances of the inheritance, the deed in this case giving an estate of *inheritance.*

Land and slaves conveyed by the husband in trust for the benefit of the wife solely, and her heirs, with power of disposition & appointment, wife fails to make any appointment, but dies leaving an infant who thereafter dies also, the husband of the wife and father of the infant still living, the wife's estate was an estate of *inheritance* and not for *life;* but if it had been *for life only,* the title of the child is derived from the deed by purchase and in either case the father succeeds to the whole as heir to the child—*Argu.*

of the State, and the actual exigencies and transactions of society with regard to this species of property, it is possible the section was introduced from a former statute through inadvertence, and has been allowed to remain unmodified on the statute book, rather because having never been attempted to be practically applied, it has remained unnoticed in modern times, than because its provisions continued to meet either the legislative or the public approbation. We should be disposed, therefore, to apply it only to those cases which come certainly and necessarily within its terms—and when it does apply, to extend its operation no farther than its terms certainly and necessarily require. And we are not to be understood as now deciding, that upon comparison with other statutes and principles, whose obligatory force is unquestionable, this 38th section is properly entitled to any operation in any case.

It remains to say, in relation to the case before us, that after the suit had proceeded for some time upon the claim, as set up in the original bill, in which the complainants denied all right of the father of Sally Ann Poston, they filed amended bills, in which they claim an interest in the slaves, in consequence of a purchase by one of the defendants from Sandford Poston, made before the suit was brought, and which is denounced in the original bill, but which, in the amended bills, is alleged to have been made for the benefit of the other uncles and aunts of Sally Ann, by agreement, or upon a trust implied from the conduct and relation of the parties. But although it seems that the purchase was probably made with a view that such of the uncles and aunts aforesaid, as would agree to share the burthens and responsibilities growing out of it, should also share its benefits—and although it should be deemed to be inferrible, that they, and especially the camplainant, Taylor, had a right, within reasonable time, to claim the benefit on the indicated terms. We are of opinion that he has not only forfeited any claim to such benefit by refusing to comply with the terms on which it was offered to him, and by failing to offer others of a character consonant with justice and the nature of the transaction, but that he should be regarded

as having actually renounced it until it is too late for him to claim it, and that he has not even in this suit, put himself in a proper attitude for enforcing such a claim.

The decree dismissing the bill is, therefore, affirmed.

*Owsley, J. T. & P. C. Morehead*, for plaintiffs; *Morehead & Reed*, for defendants.